

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY | § | |
| INSURANCE COMPANY, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 7:07-2958-HFF |
| | § | |
| CALVIN CHANCE REED,  ALEX FARRON | § | |
| TUCKER,  and DEBRA P. TUCKER, | § | |
| Defendants. | § | |

## ORDER

## I.     INTRODUCTION

This case was filed as a declaratory judgment action.  The Court has jurisdiction over the matter pursuant to 28 U.S.C. § 2201(a).

Pending before the Court is Plaintiff's motion for summary judgment.  Having carefully considered the motion, the responses, the replies, the record, and the applicable law, it is the judgment of this Court that Plaintiff's motion for summary judgment shall be granted.

## II.     FACTUAL AND PROCEDURAL HISTORY[1]

This case was brought by Plaintiff requesting a declaration that no coverage exists under a homeowner's policy for a judgment rendered by a Colorado jury.  The Colorado judgment came as the result of the shooting of Defendant Calvin Chance Reed on May 28, 2004, in Norwood,

---

[1]This section is adapted from the "Statement of Facts" in Defendant Reed's Response.

Colorado.  It is undisputed that the altercation began at the Hitchin' Post bar, where Defendant Reed

and Jesse Tucker, a South Carolina resident, engaged in an argument over a game of pool.  After this

initial altercation, Jesse Tucker went to the Norwood Inn to ask his father, Defendant Alex Tucker

(Defendant Tucker), who is also a South Carolina resident, for assistance.  At the Norwood Inn, the

Tuckers engaged in another altercation with Defendant Reed, his brother Chad Reed, and their friend

Chris Falk.

During the second altercation, Defendant Tucker shot Defendant Reed in the chest at close

range with a .22-caliber Magnum pistol.  Defendant Reed subsequently filed suit against Defendant

Tucker in a Colorado state court, alleging extreme and outrageous conduct, assault, and battery.  At

trial, a jury found in Defendant Reed's favor and awarded him a judgment in excess of $290,000.

Plaintiff, issuer of a homeowner's insurance policy (the policy) to Defendant Tucker and his

wife, Defendant Debra Tucker, instituted this declaratory judgment action on August 28, 2007,

seeking a declaration that no coverage exists for the judgment awarded in Colorado.

The policy sets forth, in relevant part, the following provisions:

### DEFINITIONS

7.  **"occurrence"**, when used in Section II of this policy, means
an accident, including exposure to conditions, which results
in:

a.  **bodily injury**; or

b.  **property damage**;

during the policy period.

\* \* \* \*

### SECTION II - LIABILITY COVERAGES

### COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1.   pay up to our limit of liability for the damages which the **insured** is legally liable; and

2.   provide a defense at our expense by counsel of our choice.

\* \* \* \*

## COVERAGE M - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**.

\* \* \* \*

## SECTION II - EXCLUSIONS

1.   Coverage L and Coverage M do not apply to:

a.   **bodily injury** or **property damage**:

(1)   which is either expected or intended by an **insured**; or

(2)   which is the result of willful and malicious acts of the **insured**[.]

(Policy 2, 15, 16.)

Plaintiff subsequently filed a motion for summary judgment on June 20, 2008.  The Court, having been fully briefed on the relevant issues, is now prepared to make a determination on the merits of the motion.

III.     **STANDARD OF REVIEW**

A.     *Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears this initial burden of informing the Court of the basis for its motions, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)).

"Once the moving party carries its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The adverse party must show more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. If an adverse party completely fails to make an offer of proof concerning an essential element of that party's case on which that party will bear the burden of proof, then all other facts are necessarily rendered immaterial and the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322-23. Hence, the granting of summary judgment involves a three-tier analysis. First, the Court determines whether a genuine issue actually exists so as to necessitate a trial. Fed. R. Civ. P. 56(e). An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

4

242 (1986). Second, the Court must ascertain whether that genuine issue pertains to material facts. Fed. R. Civ. P. 56(e). The substantial law of the case identifies the material facts, that is, those facts that potentially affect the outcome of the suit. *Anderson*, 477 U.S. at 248. Third, assuming no genuine issue exists as to the material facts, the Court will decide whether the moving party shall prevail solely as a matter of law. Fed. R. Civ. P. 56(e).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327. The primary issue is whether the material facts present a sufficient disagreement as to require a trial, or whether the facts are sufficiently one-sided that one party should prevail as a matter of law. *Anderson*, 477 U.S. at 251-52. The substantive law of the case identifies which facts are material. *Id*. at 248. Only disputed facts potentially affecting the outcome of the suit under the substantive law preclude the entry of summary judgment.

B.     *Policy Interpretation*

Under South Carolina law, insurance policies are subject to the general rules of contract construction. *Nationwide Mut. Ins. Co. v. Commercial Bank*, 325 S.C. 357, 360, 479 S.E.2d 524, 526 (1996) (citation omitted). The Court must afford policy language its plain, ordinary, and popular meaning. *Diamond State Ins. Co. v. Homestead Indus. Inc*., 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995). The meaning of a particular word or phrase is not determined by considering the word or phrase by itself, but by reading the policy as a whole and considering the context and subject matter of the insurance contract. *Yarborough v. Phoenix Mut. Life Ins. Co*., 266 S.C. 584, 592, 225 S.E.2d 344, 348 (1976).

5

The insurer's duty under a policy of insurance is set forth by the terms of the policy and cannot be enlarged by judicial construction. *South Carolina Ins. Co. v. White*, 301 S.C. 133, 137, 390 S.E.2d 471, 474 (1990). When ambiguous or conflicting terms are found in an insurance policy, however, those terms must be construed liberally in favor of the insured and strictly against the insurer. *Diamond State Ins. Co*., 318 S.C. at 236, 456 S.E.2d at 915.

The extent to which courts interpret the language of an insurance policy differently is evidence of ambiguity. *Greenville County v. Insurance Reserve Fund*, 313 S.C. 546, 548, 443 S.E.2d 552, 553 (1994). Courts may look to a dictionary to decipher the meaning of ambiguous, undefined terms. *Id*. Nevertheless, if the intent of the parties is clear, the Court has no authority to torture the meaning of policy language or to extend or defeat coverage that was never intended by the parties. *Diamond State Ins. Co*., 318 S.C. at 236, 456 S.E.2d at 915.

Where a motion for summary judgment presents a question pertaining to the construction of a written contract, the question is one of law if the language employed by the contract is plain and unambiguous. *Moss v. Porter Bros., Inc*., 292 S.C. 444, 447, 357 S.E.2d 25, 27 (1987) (citation omitted). Summary judgment is appropriate in such a case where the intention of the parties regarding the legal effect of the contract may be gathered from its four corners. *Id*.

It is the insured's burden to establish that a claim falls within the coverage of an insurance contract. *Gamble v. Travelers Ins. Co*., 160 S.E.2d 523, 525 (S.C.1968). Alternatively, the insurer shoulders the burden of establishing the exclusions to coverage. *Boggs v. Aetna Cas. & Sur. Co*., 272 S.C. 460, 252 S.E.2d 565, 568 (1979).

## IV.     CONTENTIONS OF THE PARTIES

Plaintiff argues that Defendant Tucker's shooting of and the resulting bodily injury to Defendant Reed were not an "occurrence" under the policy.  Moreover, according to Plaintiff, the shooting of and the resulting bodily injury to Defendant Reed are excluded as an intended or expected act by the insured, Defendant Tucker and, further, were the result of Defendant Tucker's willful and malicious acts.  Plaintiff also asserts that collateral and judicial estoppel are applicable in this matter.  Defendants dispute each of these assertions.

## V.     DISCUSSION AND ANALYSIS

As observed above, according to the terms of the policy, the term " 'occurrence' . . . means an accident, including exposure to conditions, which results in . . .bodily injury[ ]  or . . . property damage[ ] during the policy period."  (Policy 2.) (emphases deleted).  Thus, before the Court can decide whether Defendant Tucker's shooting of Defendant Reed was an occurrence, it must first determine the definition of the word "accident."

Because the term "accident" is not specifically defined in the policy, the term will be defined pursuant to the common understanding of the term's significance to the ordinary person.  *USAA Property and Casualty Ins. Co. v. Rowland,* 312 S.C. 536, 539, 435 S.E.2d 879, 881-82 (S.C. Ct. App. 1993).  "The South Carolina Supreme Court has interpreted the term 'accident' to mean 'an effect which the actor did not intend to produce and cannot be charged with the design of producing.'"  *Manufacturers and Merchants Mut. Ins. Co. v. Harvey,* 330 S.C. 152, 159, 498 S.E.2d 222, 225 (S.C. Ct. App.  1998) (citing *Goethe v. New York Life Ins. Co.,* 183 S.C. 199, 190 S.E. 451 (S.C. 1937)).  Stated differently, "[t]he intent to act, coupled with the intent to produce the

7

consequences is not an 'accident' as defined by the Supreme Court of South Carolina." *Harvey*, 330

S.C. at 161, 498 S.E.2d at 227.  According to  Justice David Souter, then a justice of the Supreme

Court of New Hampshire, and quoted with approval in *Harvey*,

> an insured's act is not an accidental contributing cause of injury when the insured actually intended to cause the injury that results.  "[A]n accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen [circumstance exists or] happening occurs which produces or brings about the result of injury or death."  Nor can an insured's intentional act be an accidental cause of injury when it is so inherently injurious that it cannot be performed without causing the resulting injury.

*Id.* (citing with approval *Vermont Mut. Ins. Co. v. Malcolm*, 128 N.H. 521, 523-524, 517 A.2d 800,

802 (N.H. 1986) .  Thus, it follows that an intended injury cannot be an accident.

As observed by Plaintiff, "[t]here has been no contention at any time that [Defendant]

Tucker's gun accidentally discharged or that he intended to merely shoot in the air to warn

[Defendant] Reed.  The only testimony [on this point ] is that [Defendant] Tucker intentionally

pulled his gun, aimed it at [Defendant] Reed's chest, and fired."  (Plaintiff's Reply to Defendant

Reed's Response 2.)

Applying the aforementioned definition of "accident" to the facts of this case, the Court

holds that Defendant Tucker's shooting of and the resulting bodily damage to Defendant Reed was

not an accident.  Simply put, "the effect of [Defendant Tucker's shooting of Defendant Reed] is so

integral to the act that the intent to do the act is interchangeable with the intent to cause the resulting

injury."  *Harvey*, 330 S.C. at 161, 498 S.E.2d at 227.  Stated differently, Defendant Tucker's

shooting of Defendant Reed cannot be the accidental cause of Defendant Reed's bodily injury "when

it is so inherently injurious that it cannot be performed without causing the resulting injury." *Id.* A reasonable jury could not, and would not, find otherwise.[2]

Hence, in that the Court holds that Defendant Tucker's shooting of and the subsequent bodily injury to Defendant Reed was not an accident, there is no "occurrence" as that term is defined in the policy. As such, there is no coverage under the basic terms of the subject policy.

Moreover, the exclusion section of the policy provides that coverage will not apply to "bodily injury or property damage . . . which is . . . intended by an insured. . . ." (Policy 16) (emphases omitted). "[T]he validity of an intentional act exclusion provision in a homeowner's policy require[s] a two-prong analysis. The first is whether the act causing the loss was intentional, and the second is whether the results of the act were intended." *Vermont Mut. Ins. Co. v. Singleton*, 316 S.C. 5, 7-8, 446 S.E.2d 417, 419 (S.C. 1994) (citing *Miller v. Fidelity Phoenix Ins. Co.*, 268 S.C.72, 231 S.E.2d 701 (S.C. 1977)). Defendant Reed relies on *Singleton* in arguing that the second prong is not satisfied, namely that Plaintiff has failed to establish that Defendant Tucker intended to cause bodily injury to Defendant Reed.

In *Singleton*, the Supreme Court of South Carolina affirmed the decision of a special referee granting insurance coverage in which the insured struck another person in the face, causing extensive eye injuries. *Singleton*, 316 S.C. at 10, 446 S.E.2d at 420-21. In the underlying case, the referee had found that the insured intended only to protect himself, not inflict a specific injury. *Id.*

---

[2]Although this is not a negligence action, the Court notes that, in the context of negligence, the Supreme Court of South Carolina has long held that "[o]ne is presumed to intend the natural and probable consequences of his voluntary acts." *Yaun v. Baldridge* 243 S.C. 414, 419, 134 S.E.2d 248, 251 (S.C. 1964).

Hitting someone in the face and accidentally hurting the other's eye, however, is much different than Defendant Tucker's actions when he "intentionally pulled his gun, aimed it at [Defendant] Reed's chest, and fired." (Plaintiff's Reply to Defendant Reed's Response 2.) In fact, it strains the bounds of credulity to suggest that the Defendant Reed's resulting bodily injury was anything but intentionally caused by Defendant Tucker. Therefore, inasmuch as the Court holds that Defendant Tucker, the insured, intended Defendant Reed's bodily injury, the Court necessarily holds that the exclusion section disallows coverage.

It bears noting that, in some insurance contexts, our state supreme court has defined the term "accident" from the point of view, not of the actor, but of the victim. *Eg.,Green v. United Ins. Co. Of America*, 254 S.C. 202, 206, 174 S.E.2d 400, 402 (1970). Nevertheless, assuming, without deciding, that the events described herein constitute an accident when considered from Defendant Reed's perspective, there still would be no coverage. This is so because, and as observed herein, the exclusion section of the policy states, in relevant part, that there is no coverage when the "bodily injury or property damage . . . is . . . intended by an insured. . . ." (Policy 16) (emphases omitted). Consequently, because the Court holds that Defendant Tucker, the insured, intended Defendant Reed's bodily injury, the exclusion section would negate coverage.

Given that these holdings are dispositive of the case, the Court need not address the parties' remaining arguments.

## VI.     CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of this Court that Plaintiff's motion for summary judgment be **GRANTED**.

10

**IT IS SO ORDERED**.

Signed this 19th day of March, 2008, in Spartanburg, South Carolina.

s/ Henry F. Floyd
HENRY F. FLOYD
UNITED STATES DISTRICT JUDGE